

# SUPREME COURT OF MISSOURI
## en banc

PRESLEY KARLIN,     )
            )  *Opinion issued March 4, 2025*
 Respondent,      )
            )
v.            )  No. SC100512
            )
UATP SPRINGFIELD, LLC D/B/A  )
URBAN AIR SPRINGFIELD,   )
            )
 Appellant.       )

## APPEAL FROM THE CIRCUIT COURT OF GREENE COUNTY
The Honorable Michael J. Cordonnier, Judge

UATP Springfield d/b/a Urban Air Springfield appeals the circuit court's overruling of Urban Air's motion to compel arbitration in a negligence action brought by Presley Karlin. This Court has jurisdiction under article V, section 10 of the Missouri Constitution.

Urban Air offers an arbitration agreement signed on Karlin's behalf that purports to cover Karlin's claims. Karlin claims: (a) the person who signed the arbitration agreement (i.e., his mother) had no authority to do so; and (b), even if she had such authority, the agreement applied only to claims arising on the day it was signed and does not bind Karlin with respect to injuries he suffered four months later. Neither the circuit court nor this Court is authorized to resolve these claims, however, because the

arbitration agreement – which, on its face, purports to bind him with respect to his personal injury claim – contains a delegation clause in which he agrees to arbitrate threshold matters relating to the "scope, arbitrability, or validity" of the arbitration agreement. Karlin asserts no specific challenge to the enforcement of this delegation clause. Instead, he merely challenges the validity and scope of the arbitration agreement as a whole. As a result, the delegation clause is presumed to be valid and enforceable, and Karlin must present his claims concerning the scope and validity of the arbitration agreement to the arbitrator. Accordingly, the circuit court's order is vacated and the matter is remanded for the circuit court to sustain Urban Air's motion to compel arbitration.

**Background**

On March 28, 2021, 17-year-old Karlin was injured during a visit to Urban Air, an interactive "trampoline and adventure park" located in Springfield, Missouri. He claims his injuries were caused by Urban Air's negligence in that the cushions placed to protect him in the event of a fall were inadequate for that purpose, and Urban Air knew or should have known of this dangerous condition. After turning 18, Karlin brought suit against Urban Air, which responded by filing an Application to Compel Arbitration or, in the Alternative, a Motion to Dismiss based on an arbitration agreement contained in the Release and Indemnification Agreements ("Release" or Releases") signed by adults on Karlin's behalf.

Before a participant is allowed to go into Urban Air, a Release must be signed by or on behalf of that participant. Karlin made several trips to Urban Air prior to and on

2

the date of his injury.  At each visit, one or more Releases were signed on his behalf.

Those Releases are identical in substance and state, in pertinent part:

> This Release and Indemnification Agreement (Agreement) is entered into by the Adult Participant, and if any minor(s) is/are named below, the Adult Participant on behalf of and as parent or legal guardian for such Child Participant(s) identified below in favor of UATP Springfield LLC. (Urban Air). Collectively and severally, Adult Participant and Child Participant, their heirs, successors, and assigns are hereinafter referred to as the Participant. In consideration of Urban Air permitting participant to enter the Premises and participate in the Activities, including the Activities that may occur in, about, or near 2825 S. Glenstone Ave. Springfield, MO 65804 or any other premises owned or operated by Urban Air wherever located (Premises), Participant agrees as follows:
>
> ….
>
> 6. DISPUTE RESOLUTION
>
> A. ARBITRATION. Any dispute or claim arising out of or relating to this Agreement, breach thereof, the Premises, Activities, property damages (real or personal), personal injury (including death), or the scope, arbitrability, or validity of this arbitration agreement (Dispute) shall be brought by the parties in their individual capacity and not as a plaintiff or class member in any purported class or representative capacity, and settled by binding arbitration before a single arbitrator administered by the American Arbitration Association (AAA) per its Commercial Industry Arbitration Rules in effect at the time the demand for arbitration is filed. Judgment on the arbitration award may be entered in any federal or state court having jurisdiction thereof. The arbitrator shall have no authority to award punitive or exemplary damages. If the Dispute cannot be heard by the AAA for any reason, the Dispute shall be heard by an arbitrator mutually selected by the parties. If the parties cannot agree upon an arbitrator, then either party may petition an appropriate court to appoint an arbitrator. Arbitration and the enforcement of any award rendered in the arbitration proceedings shall be subject to and governed by 9 U.S.C. § 1 et seq.
>
> B. WAIVER OF JURY TRIAL.  **TO THE EXTENT PERMITTED BY LAW, ADULT PARTICIPANT AND URBAN AIR KNOWINGLY, willingly, AND VOLUNTARILY, WITH FULL AWARENESS OF THE LEGAL CONSEQUENCES AFTER CONSULTING WITH COUNSEL (OR AFTER HAVING WAIVED THE OPPORTUNITY TO CONSULT WITH COUNSEL) AGREE TO WAIVE THEIR RIGHT TO a JURY TRIAL OF ANY DISPUTE AND TO RESOLVE**

**ANY AND ALL DISPUTES THROUGH ARBITRATION.** The right to a trial by jury is a right parties would or might otherwise have had under the Constitutions of the United States of America and the state in which the Premises is located.

8. AUTHORITY. If Adult participant signs the Agreement on behalf of his/her spouse, child, family member, friend, minor child, or other person, Adult Participant warrants and represents to Urban Air that he/she has the legal authority and such person's actual or implied authority to execute this Agreement on their behalf, including, but not limited to, the arbitration clause, release, indemnity agreement, and license.

Three of the Releases (including two signed on the date of his injury) were signed by an adult who was not related to Karlin and who had no actual or apparent authority to contract on his behalf. A fourth Release was signed by Karlin's mother on November 14, 2020, four months before Karlin's injury. Urban Air originally relied on all four Releases. On appeal, however, it limits its arguments to the Release signed by Karlin's mother.

## Standard of Review

The standard governing a motion to compel arbitration depends on whether there is a factual dispute regarding the existence of an arbitration agreement purporting to bind the nonmoving party with respect to the claims being asserted. *Nitro Distrib., Inc. v. Dunn*, 194 S.W.3d 339, 352 (Mo. banc 2006); § 435.355.1, RSMo 2016. If there is such a dispute, the circuit court must conduct an evidentiary hearing to determine whether such an agreement exists. *Dunn*, 194 S.W.3d at 352; § 435.355.1. The party seeking to compel arbitration has the burden of proving that existence by competent evidence. *Brown v. Chipotle Servs., LLC*, 645 S.W.3d 518, 523-24 (Mo. App. 2022).

4

When the circuit court finds the existence of an arbitration agreement purporting to bind the nonmoving party with respect to the claims asserted, or that fact is uncontested, the question of whether to compel arbitration is a question of law. *Car Credit, Inc. v. Pitts*, 643 S.W.3d 366, 370 (Mo. banc 2022). If there are disputes as to the scope or validity of the arbitration agreement, the circuit court must resolve those disputes before ruling on the motion unless the arbitration agreement purports to commit such disputes to the arbitrator by way of a delegation clause. *Id*. at 370-71. If there is such a clause, however, and the nonmoving party does not present a defense specific to the enforcement of that clause, the circuit court must sustain the motion to compel and send both the principal claim and any such threshold claims to arbitration. *Id.* at 371 (explaining a "delegation provision giving an arbitrator the power to decide threshold issues of arbitrability shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract" (quotation marks omitted)).

If the circuit court overrules a motion to compel, the moving party has a right to immediate appeal under section 435.440.1, RSMo 2016. With respect to the factual determination concerning the existence of an arbitration agreement purporting to bind the nonmovant with respect to the claims brought, the circuit court's decision overruling a motion to compel arbitration will be affirmed unless there is no substantial evidence to support it or it is against the weight of the evidence. *Brown,* 645 S.W.3d at 523 (citing *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976)). No such deference will be paid to the circuit court's legal determinations, however, including whether the agreement contains a delegation clause and whether the nonmovant brings a challenge specific to

5

that clause that must be resolved before it (and the arbitration agreement overall) can be enforced. *Brown v. GoJet Airlines*, *LLC*., 677 S.W.3d 514, 520 (Mo. banc 2023).

The circuit court made no factual findings requiring deference when it overruled Urban Air's motion to compel arbitration. None were required. All parties agree the Release was signed on Karlin's behalf by his mother, who warranted she had authority to do so. The only disputed issue is whether she actually had such authority. Similarly, all parties agree the Release contains no express language limiting its effect only to claims arising on the date it was signed, nor any express language extending its effect indefinitely into the future until rescinded or modified. The only disputed issue, therefore, is the proper construction of the term or scope of the Release. Both of these issues – and, more importantly, the issue of whether a court or arbitrator must resolve them – are questions of law. Accordingly, this Court reviews *de novo* the circuit court's decision overruling Urban Air's motion to compel arbitration. *Id*.

## ANALYSIS

There is no question in this case that Karlin's mother signed the Release on his behalf and this Release purports to bind Karlin to arbitrate "[a]ny dispute or claim arising out of or relating to … the Premises [or] Activities," including claims for personal injury. Karlin claims his mother lacked authority to enter into such an agreement on his behalf, notwithstanding her warranty and representation that she had such authority. This is a challenge to the ***validity*** of the Release, not its existence.

Similarly, Karlin's contention that the Release is limited to injuries suffered on the the date his mother signed it (i.e., November 14, 2020) presents only a question of law,

6

not fact.  Karlin infers such a limitation from various terms in the Release and Urban Air draws a contrary inference from other terms.  In the end, it is a matter of how the Release is to be construed.  It is a challenge to the *scope* of the Release, not its existence.

To be sure, in the absence of any further instruction from the Release, the circuit court would be required to resolve these two questions (i.e., the first regarding the "validity" of the Release and the second regarding its "scope") before it could rule on Urban Air's motion to compel arbitration.  But there is further instruction in the Release.  It provides that "[a]ny dispute or claim arising out of or relating to … the *scope*, arbitrability, or *validity* of this arbitration agreement … shall be … settled by binding arbitration[.]"  (Emphasis added).  This is a "delegation clause," and, according to its plain language, Karlin must bring any challenges to the validity or scope of the Release before the arbitrator, not a court.  Such challenges include whether Karlin's mother lacked authority to bind him (i.e., a challenge to the "validity" of the Release) and whether the Release applied only to injuries occurring on the day it was signed (i.e., a challenge to the "scope" of the Release).

Delegation clauses are agreements to arbitrate threshold issues concerning the enforceability of an arbitration agreement.  *Id*. at 521 (explaining "arbitration is, in essence, a matter of contract, and a delegation clause is simply an additional, antecedent agreement to arbitrate arbitrability").  When an arbitration agreement contains a delegation clause, it will be enforced according to its terms unless the party opposing arbitration raises a challenge specific to the delegation clause itself.  *Id*.; *see also Rent-A-Ctr. W., Inc. v. Jackson*, 561 U.S. 63, 72 (2010) (explaining, unless the party opposing

7

arbitration "challenged the delegation provision specifically, we must treat it as valid …

and must enforce it … leaving any challenge to the validity of the Agreement as a whole

for the arbitrator").  When the arbitration agreement contains a delegation clause,

challenges to the scope, validity, or enforceability of the arbitration agreement as a whole

are not sufficient to defeat a motion to compel arbitration even though the delegation

clause is part of that larger agreement.  *GoJet Airlines*, 677 S.W.3d at 521.  Instead, when

only such general challenges are raised, the delegation clause will be enforced, and the

arbitrator (not a court) will resolve such threshold matters.  *Id*.

Karlin raises no challenge that is unique or specific to the delegation clause in the

Release.  Instead, he argues his claims concerning his mother's lack of authority to sign

the Release on his behalf and the restricted effective date or term of that Release are

questions of "formation" such that, if he prevails on either of them, there is no arbitration

agreement to enforce.  This is correct in the sense that, if his mother had no authority to

sign the Release on his behalf, or if the term of the Release was limited to the day it was

signed, then Karlin is not bound by the Release and is entitled to have his negligence

claim decided in court.  But this is beside the point.  The question is ***who*** is to decide

whether his mother had authority and ***who*** is to decide what the term of the Release was.

The answer to that question is found in the delegation clause, i.e., such challenges are to

be decided by the arbitrator.  Unless there is some defect unique to the delegation clause

itself, courts have no choice but to enforce them.  *Id*; *Credit, Inc.*, 643 S.W.3d at 371.

Here, Karlin raises no such specific challenge to the delegation clause in the Release;

8

therefore, he must bring his challenges concerning the validity and scope of the Release to the arbitrator.[1]

Karlin relies heavily on this Court's decision in *Theroff v. Dollar Tree Stores, Inc.* 591 S.W.3d 432, 436 (Mo. banc 2020), to argue he was under no obligation to challenge the delegation clause because (if his challenges to the scope or validity of the arbitration agreement prevail) there is no arbitration agreement and, therefore, no delegation clause to enforce. Karlin's reliance on *Theroff* is misplaced, however, because there is a material difference between the kind of arguments Karlin asserts and those the party opposing arbitration in *Theroff* asserted.

In *Theroff*, a legally blind employee completed hiring paperwork with the help of an assistant manager. *Id.* at 435. The assistant manager controlled the computer displaying the forms and prompted the employee to give the required information so the assistant manager could type it into those forms. *Id.* The assistant manager told the employee the forms were "normal employment things" and never mentioned they included an arbitration agreement, waiver of the right to a jury trial, and arbitration rules. *Id.* The employee was not informed of the existence of the arbitration agreement (which she could not see or read), she did not sign that agreement herself, and she did not authorize the assistant manager to make the "operative click" accepting that agreement. *Id.* at 436-37. Accordingly, there was sufficient evidence for the circuit court to find the employee never agreed to arbitrate anything, and, significantly, there was no agreement

---

[1] Nothing in this opinion should be taken as suggesting how the arbitrator should rule on Karlin's challenges to the validity and scope of the Release.

signed by her or on her behalf purporting to do so. In *Theroff*, therefore, the party opposing arbitration contested the factual existence of an agreement rather than merely challenging the legal validity or scope of such an agreement.

Karlin, on the other hand, concedes his mother signed the Release on his behalf and the Release – depending on how it is construed – applies to Karlin's personal injury claim. The question of whether Karlin's mother had authority to bind him is a question of law, as is the proper construction of the Release's scope or term. These are legal challenges to the validity and scope of the Release. Neither of these challenges are to the factual existence of the Release as an agreement that, on its face, can be construed to bind Karlin to arbitrate his personal injury claim. Accordingly, *Theroff* does not apply, and, because Karlin raises no challenge specific to the delegation clause, it must be enforced.

## CONCLUSION

For the reasons set forth above, the circuit court erred in overruling Urban Air's motion to compel arbitration. Its order doing so is vacated, and the matter is remanded for the circuit court to sustain that motion.



Paul C. Wilson, Judge

Russell, C.J., Powell, Fischer,
Ransom, Broniec, JJ.,
and LePage, Sp. J., concur.
Gooch, J., not participating.

10